# Exhibit A (Complaint)

E-FILED; Frederick Circuit Court
Docket: 12/20/2024 9:44 PM; Submission: 12/20/2024 9:44 PM
Envelope: 19282379

## IN THE CIRCUIT COURT FOR FREDERICK COUNTY, MARYLAND

| | |
|---|---|
| **ANNA SCHMUCK,**<br>3722 Hope Commons Circle<br>Frederick, MD 21704 | : |
| | : |
| And | : |
| **LISA DIAZ,**<br>3722 Hope Commons Circle<br>Frederick, MD 21704 | : |
| | : |
| And | : |
| **ROMAND BRYAN SCHMUCK,**<br>314 E. Wainscot Drive<br>New Market MD 21774 | :   Case No.:<br><br>:   C-10-CV-24-000886 |
| *Plaintiffs.* | : |
| v. | : |
| **AMAZON.COM, INC.,**<br>251 Little Falls Drive<br>Wilmington, Delaware 19808 | : |
| Serve Upon:<br>Corporation Service Company<br>Registered Agent<br>251 Little Falls Drive<br>Wilmington, Delaware 19808 | : |
| And | : |
| **AMAZON.COM SALES, INC.,**<br>**AMAZON.COM SERVICES, LLC,**<br>**AMAZON DATA SERVICES, INC.,**<br>**AMAZON LOGISTICS, INC.,**<br>**AMAZON RETAIL, LLC,**<br>**AMAZON PAYMENTS, INC.,**<br>**AMAZON ADVERTISING, LLC,**<br>410 Terry Ave. North<br>Seattle, WA 98109 | : |

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

1

Serve Upon:
CSC-Lawyers Incorporating Service Co.            :
7 St. Paul Street, Suite 820
Baltimore, MD 21202                              :

And                                             :

**NINGBO ZIZHUAN TECHNOLOGY CO.,**  :
**LTD.,**
**(Trading As "gogreat" and/or "ARARG"),**  :
Zhuangshi Street No. 222, Room 323
South Section of Minghai Avenue                 :
Zhenhai District, Ningbo, Zhejiang, 315000
P.R. China                                      :

Serve Upon:                                     :
Zhihua Han, Esq.
Registered Agent
Zhihua Han of Wen IP, LLC                       :
7710 80th Place SE
Mercer Island, Washington 28040                 :

*Defendants.*                                   :

---

## COMPLAINT

COME NOW the Plaintiffs, Anna Schmuck, Lisa Diaz, and Romand Bryan Schmuck, and hereby sue the Defendants, Amazon.com, Inc., Amazon.com Sales, Inc., Amazon.com Services, Inc., Amazon Data Services, Inc., Amazon Logistics, Inc., Amazon Retail, LLC, Amazon Payments, Inc., Amazon Advertising, LLC, and Ningbo Zizhuan Technology Co., Ltd. (trading as "gogreat" and/or "ARARG"), for the severe and permanent burns, scars, disfigurement and other traumatic physical and emotional injuries and damages caused by the inherently defective and unreasonably dangerous products

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

2

sold and delivered to the Plaintiffs by the Defendants, and for their causes of action, hereby state as follows:

## PARTIES

1.    The Plaintiffs, Anna Schmuck ("Anna"), Lisa Diaz ("Lisa"), and Romand Bryan Schmuck ("Bryan") (each of Anna, Lisa and/or Bryan is an individual "Plaintiff," and at times hereinafter, they are collectively referred to herein as the "Plaintiffs"), are residents of Frederick County, Maryland.  Lisa and Bryan are the parents of Anna, who was a minor at the time of the horrific accident caused by the Defendants as alleged herein.

2.    The Defendant, Amazon.com, Inc., is a Delaware corporation that transacts consumer business with the public, including the Plaintiffs in Maryland, primarily but not exclusively through their international internet marketplace, Amazon.com, and through several related and affiliated corporate entities doing business in Maryland, which entities are also incorporated in Delaware and materially involved in the claims brought herein, including Defendants Amazon.com Sales, Inc., Amazon.com Services, LLC, Amazon Data Services, Inc., Amazon Logistics, Inc., Amazon Retail, LLC, Amazon Payments, Inc., and Amazon Advertising, LLC (hereinafter, collectively, "Amazon" and/or the "Amazon Defendants").  At all relevant times, Amazon developed, designed, tested, manufactured, marketed, advertised, sold, distributed, and delivered into the stream of commerce products to Maryland residents and Maryland consumers, including the defective, inherently dangerous and latently destructive products to the Plaintiffs as alleged in this Complaint, through their negligent and other tortious and wrongful acts,

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

3

and in agency with the other Defendants, for which all Defendants are jointly and severally liable.

3. The Defendant, Ningbo Zizhuan Technology Co., Ltd. (trading as "gogreat" and/or "ARARG") (hereinafter "ARARG"), is a Chinese Company with its primary place of business at Zhuangshi Street No. 222, Room 323, South Section of Minghai Avenue, Zhenhai District, Ningbo, Zhejiang, 31500, in the People's Republic of China, but which at all times relevant hereto, conducted and continues to conduct business in the United States, and specifically in this jurisdiction, by way of developing, designing, testing, manufacturing, marketing, advertising, selling, distributing, and delivering into the stream of commerce defective consumer products to Maryland residents, including the defective, inherently dangerous and latently destructive products to the Plaintiffs as alleged in this Complaint, through their negligent and other tortious and wrongful acts, and in agency with the other Defendants, for which all Defendants are jointly and severally liable.

## JURISDICTION AND VENUE

4. The incident complained of herein occurred on or about December 27, 2021, at the home of Anna and Lisa located at 3722 Hope Commons Road, Frederick County, Maryland.

5. This Court has jurisdiction over this lawsuit as Defendants regularly conduct business throughout Maryland and specifically in this jurisdiction, including but not limited to, by and through the Amazon.com business platform, website, shipping, delivery and distribution system, payment system and operational model, by developing, designing, testing, manufacturing, marketing, advertising, selling, receiving payment for,

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

4

shipping to, distributing, and delivering into the stream of commerce defective consumer products to Maryland residents, including the defective, inherently dangerous and latently destructive products to the Plaintiffs as alleged in this Complaint.

6.    Venue is appropriate in this Honorable Court pursuant to Md. Code, Cts. & Jud. Proc. §§ 6-201 to 6-203, as the cause of action arose in Frederick County and the Defendants regularly conduct business in this venue.

## FACTS COMMON TO ALL COUNTS

7.    At all times relevant to this Complaint, Defendant ARARG, in concert with the Amazon Defendants in agency or otherwise, designed, manufactured, distributed, and sold a product advertised on Amazon.com as "ARARG Tabletop Fire Pit Smores Maker Tabletop Fireplace Smokeless Fire Pit Personal Firepit Indoor Fireplace Isopropyl Alcohol Fire Pit Bowl Mini Fireplace House Warming Gift" (hereinafter the "Fire Pit").

8.    This Fire Pit is an open concrete reservoir, gray in color, in appearance like a concrete bowl, and is marketed as a product that can safely contain burning liquid alcohol to make indoor fires. Defendants advertised and marketed the Fire Pit as a "safe" method of creating a "tabletop" fire through which the consumer purchaser could use to make s'mores with the family or "set the mood," along with several other uses marketed and advertised on Amazon.com and other websites in which the Amazon Defendants highlighted the product as part of its marketing campaign to sell it to Marland consumers, such as the Plaintiffs, on Pinterest.com and Bustle.com, to name only two examples.

9.    On Amazon.com, the Amazon Defendants described the Fire Pit as a clean burning product that uses "Clean Fuel" in the form of 91% isopropyl alcohol or 97%

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

ethanol that "… does not produce gas pollution [sic]…" and which is "…easy to find and affordable."

10.    Unfortunately, as the averments herein make clear, the Fire Pit is not only tragically unsafe for its advertised and intended use, but latently defective and inherently dangerous to consumers like the Plaintiffs, who were caused to suffer horrific and traumatic injuries as a result of use enticed by the Defendants.

11.    On September 28, 2023, Canada issued a recall of similar tabletop fire pits. The recall notice warned consumers of the dangers of "flame jetting," which

> …occurs when fuel vapours around a poured fuel stream ignite when a user refuels a portable fire product that is still burning a flame that is not readily visible.  This can result in a burst of flaming fuel being rapidly expelled out of the container and travelling a distance dangerous to the user and bystanders.  Flame jetting occurs very quickly, so the user and/or bystanders are unable to react quickly enough to move away from an incoming flame jet.[1]

12.    The notice goes on to state: "The lack of appropriate labelling and hazard information could contribute to a flame jetting incident and/or unintentional exposure to the product and lead to serious illness, injury or death." *Id.*  No such notice or warning was included in the marketing, advertising or product materials by Defendants, including the website, marketing platform and digital advertising by the Amazon Defendants.

13.    On October 17, 2024, the United States Consumer Products Safety Commission ("CPSC") recalled fire pits identical to those placed into the stream of

---

[1]https://recalls-rappels.canada.ca/en/alert-recall/flikrfire-personal-firepots-recalled-due-lack-appropriate-labelling-and-hazard

commerce by the Defendants.[2]  The CPSC recall notice described the risk to consumers using isopropyl alcohol or ethanol in tabletop fire pits as follows:

> Alcohol flames can be invisible and lead to flame jetting when refilling the fire pit reservoir. Flame jetting is a serious event that can occur while pouring alcohol, when fire flashes back to the alcohol container and suddenly propels burning alcohol out of the container and onto people nearby.
>
> Alcohol can also splash, spill or leak out of the fire pit reservoir during use, causing a flash fire that can spread and create larger hotter flames, that can escape the unit.
>
> Use of the recalled fire pits can lead to injury quickly and unexpectedly, causing burns in less than one second, that can be serious and deadly.

*Id.*

14.    The CPSC warned that consumers should immediately stop using fire pits of this kind and dispose of them, noting further: "It is a violation of federal law to sell or distribute recalled products."  *Id.* No such notice or warning was included in the marketing, advertising or product materials by Defendants, including the website, marketing platform and digital advertising by the Amazon Defendants.

15.    These dangers were, or should have been, known and obvious to the Defendants in 2021, who were in the best position to recognize them, required to test for them, charged with responsibility for them and had a duty to protect against all such harm. But Defendants placed fire pits like the product at issue in this case into the stream of commerce without informing consumers, like the Plaintiffs, of the dangers associated with them in favor of profit motive, resulting in tragic and horrific harm to the Plaintiffs.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

---

[2] https://www.cpsc.gov/Recalls/2025/Colsen-Recalls-Fire-Pits-Due-to-Risk-of-Serious-Burn-Injury-from-Flame-Jetting-and-Fire-Spreading-Hazards

7

16.    Despite several warnings and recalls from the governments of two countries, Amazon continued to advertise this inherently defective and unreasonably dangerous product, the ARARG Fire Pit, on its website, without requisite warnings and without removing the product from consumer harm altogether until, it appears, only recently.

17.    On or around November 13, 2021, Plaintiff Lisa Diaz wished to purchase a family Christmas present, focusing on the idea that it should be something that the family could do together with a winter theme. She went to Amazon.com, having heard that tabletop "s'mores makers" were available. She chose the "ARARG" Fire Pit as it was one of the first items to appear in her search results. Amazon advertising specifically targeted, suggested and endorsed this product to Plaintiffs in response to their search. Additionally, it appealed to her, as Amazon's advertising intended, because, *inter alia*, of Defendants' claim that the fuel source for the Fire Pit was easy to find, that the product was safe to use indoors, and that it burned "clean" without "smoke, ash or ashes..." The Fire Pit was shown with several photos of people gathered around a romantic indoor fire, making s'mores and relaxing. There was no mention of any hazards associated with the product or that the product had been recalled in similar form at various times in the past due to the significant safety hazards associated with its use.

18.    Using her Amazon account, Ms. Diaz purchased the Fire Pit from the Defendants as advertised, as well as some sticks to make s'mores, *i.e.*, a "s'mores kit," also sold on Amazon.com, on or around November 13, 2021. Her credit card statement from the same date specifies that payment for the Fire Pit was made to Amazon

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

8

Marketplace, *i.e.*, "AMZN Mktp US*NA4SX0TS3Amzn.com/billWA" using the payment system required for the purchase of these products by the Defendants.

19.    The Plaintiffs were completely unaware at the time of Ms. Diaz's purchase that the Fire Pit was actually manufactured by a company based in China that had entered into an agency relationship with Defendant Amazon through several agreements.  As Plaintiffs had purchased the product from Amazon, they believed and reasonably relied upon several assurances from Amazon, published widely on its own site and various other sites, that products sold through its marketplace met basic safety requirements, including those necessary to market and sell products in the United States.  Plaintiffs' belief had a reasonable basis in part on Amazon's failure to conspicuously disclose all necessary warnings of the known and latent dangers associated with the use of products like the Fire Pit and similar products, recalls regarding the product, and the location of Defendant Amazon's agent and partner, ARARG, as the designer, manufacturer, guarantor and warrantor of the product, in conjunction with the other Defendants, in agency and otherwise.

20.    Plaintiffs' understanding of the source of the Fire Pit is objectively reasonable given Amazon's agreements with ARARG.  Upon information and belief, these agreements allow Amazon to control virtually all aspects of the design, manufacture, handling, marketing, shipping, advertising, storage, distribution, sale, resale, delivery, warranty, guaranty, recall, return, exchange, payment handling, indemnity, defense and literally all other aspects of the sale and delivery of such products from countries partner and agent manufacturers like ARAG in China through its internet marketplace and

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

9

otherwise, therefore skirting the most basic safety requirements applicable to U.S. consumer products in favor of profit.

21.    Upon information and belief, before the sale of the Fire Pit to Plaintiffs, Amazon had entered into a Business Solutions Agreement ("BSA") or its equivalent with ARARG, the terms of which provided that Amazon had *control over all essential elements* of the manufacture, delivery, distribution, payment, sale and marketing of the Fire Pit product.  The BSA provided that Amazon retained sole right to accept and process all customer payments, and that it would remit a percentage of that payment to ARARG without the customer's involvement.  The BSA set the price of any ARARG item sold on Amazon.com, requiring that it be as favorable to customers of the site "as the most favorable terms" offered by ARARG for the same product sold elsewhere.

22.    In the BSA, Amazon retained "sole discretion [to] accept, calculate, and process cancellations, returns, refunds, and adjustments for the benefit of customers."  It controlled the manner in which the Fire Pit would be listed and advertised on Amazon.com, stating in the BSA that "[w]e have the right in our sole discretion to determine the content, appearance, design, functionality and all other aspects of the Amazon Sites…," and warning that any violation of this provision would result in the immediate suspension or removal of all ARARG products from the site.

23.    The BSA gave Amazon sole authority to communicate with a customer in the event of a dispute over the product and its sale—Amazon's A-to-Z Guarantee—which included the right to withhold payment from its agent ARARG until the dispute was resolved.  Finally, the promotional material inside the box in which the Fire Pit arrived at

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

Plaintiffs' home provided that communications concerning the product should come through Amazon.

24.    Plaintiffs' reasonable and justified belief that the Fire Pit was an Amazon product was further bolstered by its arrival **in an Amazon box, delivered by Amazon**.

25.    Upon information and belief, at the time of the Fire Pit's sale, Amazon and ARARG had agreed to a Fulfillment by Amazon Services Agreement ("FBA"), in which the Fire Pit would be stored at an Amazon fulfillment center until it was tagged for shipment. It would then, per the FBA, be shipped by Amazon and delivered by Amazon in Amazon packaging to an Amazon customer, in this case, the Plaintiffs.

26.    Plaintiff Diaz placed her order for the Fire Pit and s'mores kit through the Amazon website on Saturday, November 13, 2021, and it arrived at her door step in an Amazon box the following Wednesday, November 17, 2021, delivered by Amazon and paid for by Plaintiff Diaz to Amazon through Amazon's proprietary application payment system.

27.    The box containing the Fire Pit included a cylindrical concrete bowl; a brown circular coaster/cover with the ARARG insignia on its top, which was similar in appearance to a candle snuffer or flame stopper; and, a laminated insert with a picture of the ARARG Fire Pit with a large flame burning from its top. The insert provided the following instructions to Plaintiffs:

> CAUTION HOT. ARARG FIREPLACE IS A PERFECT DOCORATION FOR YOUR HOME AND PATIO. OUR STYLISH PORTABLE FIRE PIT WILL CREATE AMAZING ATMOSPHERE FOR ANY SITUATIONS.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

11

WORDS ARE MELT IN FLAME, THE MOMENT IS ETERNITY [sic].

In smaller type, the insert stated:

- PLEASE ALWAYS KEEP SAFETY IN MIND.
- FIRE PIT CAN BE VERY HOT AFTER FUEL BURNS OUT, PLEASE DO NOT TOUCH THE FIRE PIT TILL 10 MINUTES AFTER BURNING OUT [sic].
- BURNING USE 70% OR 91% ISOPROPYL ALCOHOL AS FUEL; BURNING 95% OR HIGHTER ETHANOL AS FUEL [sic].
- DO NOT REFILL AND TOUCH THE FIRE PIT WHILE BURNING.
- PLEASE KEEP THE FUEL CONTAINER AWAY FROM THE FIRE PIT WHILE IT'S BURNING.
- PLEASE COVER TO EXTINGUISH.
- **NOTE: IF YOU HAVE ANY QUESTIONS ABOUT OUR PRODUCT, PLEASE CONTACT US VIA AMAZON**, OR SEND EMAIL TO OUR ADDRESS: ZIZHUAN_US@163.COM. PROFESSIONAL AGENT WILL RESPONSE WITHINT 24 HOURS [sic]. *(Emphasis added)*.

28.    No other warning was provided with the product. There was no mention of the danger of death or serious injury that ultimately led to the recall of these and similar products in Canada and the United States. There was no explanation of flame jetting or the risk of flash fires and the manner in which a consumer could avoid this terrible end result.

29.    On or around December 27, 2021, Plaintiff Anna Schmuck, who was 15 years old at the time, wanted to make s'mores in the Fire Pit with friends. As instructed by the packaging referenced above, she poured isopropyl alcohol into the Fire Pit and lit the product to ensure that it was safe. Upon seeing that a flame developed, she placed the circular "flame stopper" on the top of the Fire Pit to extinguish the fire as she had been

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

12

directed by the instructions that came with the product. When she removed the flame stopper, she looked into the Fire Pit and could not see any flame. Anna added alcohol and an attempt to light the product again and an enormous flame shot sideways from the Fire Pit toward Anna, engulfing her with flames and dousing her with flaming alcohol, setting her clothes and person on fire. She had no time to react. It was later discovered that the flame had traveled to items behind Anna, including the counter and rug. Anna's friend, who was present during the entirety of this horrible episode, was untouched by the fire.

30.    Initially, the fire traveled onto Anna's hand before shooting suddenly up her torso, setting her chest, arms, and neck on fire.

31.    She ran into the adjacent room in flames, in a frenzied panic, screaming and on fire.

32.    Not knowing what to do and in excruciating pain, she rolled on the floor to try to extinguish herself, but the flames could not be put out. She began running around the house, ultimately fleeing out the front door. Her screams of agony and hysteria as she burned are recorded on a Ring doorbell camera outside her Frederick home. Anna's friend grabbed a pillow from the living room and began hitting the flames to try to extinguish them. After several excruciating minutes that felt to her like a horrific painful lifetime, the flames were finally put out.

33.    Anna's mother, Lisa Diaz, was at a nearby restaurant eating with a friend, when she received a call from a neighbor, whose daughter had heard Anna's frantic screams of pain, and stating that something was wrong.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

13

34.     Upon hearing this, Ms. Diaz was unable to drive due to her hysteria and severe anxiety, and she simply began to run the more than half mile from the restaurant to her home.

35.     She arrived home to find Anna sitting on the sidewalk, crying in pain, with seared skin and severe distress.  Ms. Diaz recalls the smell of burnt flesh all around Anna and her daughter's skin as it fell off her shoulders in strips.

36.     Anna was in horrific and intense pain that became worse as she waited for medical personnel to help her.  She felt very cold when the fire was first extinguished, feverish and uncontrollably shivering.

37.     However, Anna's pain continued to increase.  It was so bad that the searing pain made her believe that the fire had somehow reignited.  Her skin peeled away, revealing the tissue underneath and leaving gaping wounds all over her body.

38.     An ambulance arrived, but immediately upon seeing the dire, life-threatening character of Anna's injuries, drove her to a field where she was air lifted by medivac helicopter to the ICU at Medstar Washington Hospital Center in Washington, D.C. ("WHC").

39.     Plaintiff Bryan Schmuck, Anna's father, was with Anna's brother at the time and received a call from a neighbor, informing him that something has happened to his daughter and she had been airlifted to WHC.

40.     Bryan Schmuck drove in a frenzy from Frederick, Maryland to WHC, a distance of nearly 50 miles, imagining the worst in his mind as to what he would encounter when he arrived a WHC.  Mr. Schmuck has served over 20 years as a police officer, and

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

14

conditioned by his job to be calm even when observing something that could cause severe distress in others. However, he could not maintain his composure when he arrived to find his 15-year-old daughter sitting in a wheelchair in the ICU, her body and face heavily bandaged, clearly burned all over her body and groaning in agonizing pain.

41.     Anna remained in intensive care for four (4) days before her transfer to the Burn Unit at WHC. Upon her arrival, she was examined and found to have second degree burns to her left lower leg and right forearm, and third degree burns of her chest, torso, left armpit, neck, right shoulder, and right arm. A portion of her right ear lobe was burned completely off. She would require extensive treatment, and she remained hospitalized in the Burn Unit for over a month through the end of January 2022 at WHC.

42.     While at WHC, Anna's pain and suffering defies description. She went through several skin graft procedures and multiple surgeries. Skin was taken from other parts of her body as donor sites for her horribly burned upper body, resulting in bilateral hypertrophy. Anna's mind was filled, as would be the case with any teenager, with whether she would survive and how she would be seen by people at school, in her family and in her community, now that she was so badly burned and scarred. She became severely depressed, suicidal, and required substantial psychological treatment while in the Burn Unit. Her motion was restricted by pain, and the tightness associated with her scars made it feel as if her skin was "too tight".

43.     Anna's parents took turns spending every day with Anna while she remained at the WHC Burn Unit. They, too, were exposed to unthinkable pain, suffering, and severe mental anguish and emotional distress from experiencing things with their

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

15

daughter that they cannot forget; vivid memories of when Anna was asked to take a shower for the purpose of removing a skin graft, and her high-pitched screams as the staples were removed and her skin sloughed off her body.

44.    Anna's parents made the decision to keep Anna out of school during her recovery, since her return to high school would be nearly impossible in light of continuing treatment and the obvious differences in her physical appearance after the fire. This continued through the summer of 2022. Over this period, Anna's life was on hold, and she became a 15-year-old shut in. Anna's medical providers placed her on strong narcotic medication with a high risk of abuse, especially in someone so young. She was warned that any exposure to the sun could be deadly to her, and that she should avoid it at all costs. She experienced the after-effects of malnutrition secondary to her open wounds and resulting hypermetabolic state, but she did not want to eat.

45.    Anna's treatment continued following her time at WHC. She consulted with a plastic surgeon for laser scar treatment, but he informed her that she would always have scars in the areas most effected by the flames. She remained in severe pain for several months after the occurrence, as doctors tried different medications in the hope of weaning her off of dangerous opioid analgesics that were an unfortunate necessity given the level of pain characteristic of 3rd degree burns. Anna continued psychological treatment and counseling due to severe depression, anxiety, suicidal ideation and post-traumatic stress disorder. She will never recover physically or mentally from what occurred on December 27, 2021, and her treatment continues to this day.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

16

46.    Plaintiff Bryan Schmuck's and Lisa Diaz's health care expenditures in the attempts to heal, recover and normalize the life of their minor daughter well exceed $1,000,000. Their out-of-pocket costs, already financially impossible to pay but compounded by their time away from work to spend time with Anna exceed $1,000,000 as well.

47.    Their expenses are nothing, however, in comparison to the emotional trauma caused by what they were forced to witness their daughter go through.

48.    Anna has missed and continues to miss so much of life because of this tragic and horrific event caused by the Defendants, fueled by their singular profit motive for which the safety and well-being of people like the Plaintiffs, Anna and her parents, are disregarded. The damage done to Anna's life (and the damages done to lives of her parents) because of her exposure to the Fire Pit, include the following:

a.  Anna missed more than a year from high school with medical treatments and surgeries. Her parents did their best to ensure that she had the proper programs at home to prepare her for secondary education, but Anna still had significant and atypical gaps in her academic knowledge base. Anna had to take courses at a local community college in an attempt to catch up with other students in her class.

b.  Anna did not accompany her friends to Senior Week because it would mean wearing a bathing suit to her horrific embarrassment and exposing herself to the sun, which was life-threatening.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

17

c. Anna did not pursue her dream of attending a four-year college out-of-state because of her mental and emotional distress, including the fact that she feared that being away from her family would remove psychological and emotional support, and expose her to ridicule, embarrassment and humiliation because of her injuries.

d. Anna could not attend her Senior Prom due to her mental and emotional distress and her physical injuries.

e. Anna did and does continue to fear being in public, including being seen and photographed, because of her injuries, her mental and emotional harm, her embarrassment, her distress and the damage caused by the Defendants, which will last a lifetime.

f. Anna has experienced and continues to experience agoraphobia of all sorts and every kind, fearing that if she went out, she would be subject to the visual scrutiny of others, directed at her horrible scarring, hyperpigmented skin, and severe bilateral hypertrophy, which can be especially difficult to hide in the summer.

49.    Defendants have permanently and egregiously scarred, both physically and psychologically, Anna Schmuck and her parents, Bryan Schmuck and Lisa Diaz. Anna will be required to continue to pursue physical and mental health care in the future for the rest of her life as a result of the wrongful acts of the Defendants, in the hope of getting

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

18

closer to repairing the damage that is done, but there is no amount of treatment that will take away the physical, mental, emotional distress that will last a lifetime.

50.    Defendants' statement in their advertising of the Fire Pit— "the moment is eternity"—is horrifyingly ironic, but wholly accurate, as it relates to Plaintiffs.  A single moment changed their lives in unthinkably horrific ways.

## COUNT I – STRICT LIABILITY – FAILURE TO WARN
### Defendants Amazon and ARARG

51.    Plaintiffs hereby incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

52.    The Amazon Defendants and ARARG developed, designed, manufactured, advertised, promoted, distributed, shipped, sold, and placed into the stream of commerce the Fire Pit, expecting that it would reach consumers in the condition in which it was designed and sold, and knowing, or having reason to know, that the Plaintiffs would use the product with the understanding that it could be used without danger if the directions and warnings supplied by Defendants were followed.

53.    The subject Fire Pit was sold, distributed and delivered to the Plaintiffs by the Defendants, who paid Amazon for the subject products through the Amazon mandated payment site and internet protocol.

54.    At the time of the incident in which she was injured, Plaintiff Anna Schmuck was using the subject product as it was intended and directed by Defendants to be used.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

19

55.    Defendants are liable to Plaintiffs because they failed to provide adequate warnings regarding the use of the subject Fire Pit, causing it to be unreasonably dangerous and inherently defective to the Plaintiff, the intended user, at the time it left Defendants' possession and Defendants placed it into the stream of commerce.

56.    Defendants, as designers, manufacturers, sellers, and distributors of the product, are held to the level of knowledge of an expert in the field, and knew or should have known that the Fire Pit was dangerous, defective, and unsafe for its intended use.

57.    Despite Defendants' knowledge of the dangers associated with the use of the Fire Pit, Defendants designed, manufactured, promoted, advertised, shipped, delivered, and distributed, and/or sold the product without adequate information and data or warnings of the dangers of the Fire Pit to the Plaintiffs.

58.    Standards within the industry published several years before the sale of Defendants' Fire Pit relating to the sale and distribution of alcohol fuel burning, decorative appliances, also known as unvented fuel burning devices, like the Fire Pit provided that warning labels must be affixed to the product before it is shipped to warn consumers, *inter alia,* that the product constitutes a fire and explosion hazard, and explaining steps that must be taken or avoided by the consumer. The Fire Pit did not contain any warning affixed to it or in the Amazon box in which it arrived, other than the package insert discussed above.

59.    Defendants, especially given the history of the product, knew or should have known that consumers, including Plaintiffs, would foreseeably suffer severe injury or death as a result of its failure to warn.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

20

60.    As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiff Anna Schmuck suffered severe burns over a large portion of her body, severe emotional, physical, and psychological injury, permanent scarring and disfigurement, financial loss including, *inter alia*, past, present and future medical expenses, loss of income and future income, other economic damages, and past and future non-economic and other compensatory damages.

61.    As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiffs Bryan Schmuck and Lisa Diaz were forced to pay significant amounts for past, present and future medical expenses, equipment, and other out-of-pocket expenses for medical care and life assistance, and, additionally, suffered consequential and compensatory damages of their own for their physical and emotional harm, mental anguish and emotional distress associated with their harm and Anna's injuries sustained as a result of the wrongful acts of the Defendants.

62.    As a direct and proximate result of Defendants' negligent, wrongful, reckless and careless conduct, including but not limited to Defendants' failure to warn of the inherent defects and dangers of the subject product, Plaintiffs sustained severe, serious and ongoing bodily injuries, incurred and continue to incur substantial costs and expenses for medical care, assistance and treatment, lost time and money from her employment, loss of future earnings, and experienced and continues to experience functional impairments, as well as having been caused to suffer severe pain and suffering, permanent injuries, permanent scarring and disfigurement, economic damages, past, present and future medical costs and lost wages, loss of future earnings, other permanent injuries,

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

21

emotional distress, mental anguish, stress, anxiety, insomnia, nausea, reduced quality of life, and other compensatory damages.

WHEREFORE, the Plaintiffs, Anna Schmuck, Romand Bryan Schmuck, and Lisa Diaz, pray for judgment in their favor against Defendants, jointly and severally, for all measure of compensatory damages, including past, present and future economic and non-economic damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), plus pre-judgment and post-judgment interest, and attorneys' fees and costs.

## COUNT II – STRICT LIABILITY – DESIGN DEFECT
### Defendants Amazon and ARARG

63.    Plaintiffs hereby incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

64.    The Defendants designed, manufactured, shipped, distributed, delivered, marketed, advertised, sold and placed the Fire Pit into the stream of commerce as part of the normal course of business.

65.    The Defendants knew or should have known prior to the design, manufacture, distribution, advertising, sale, delivery to, and use by the Plaintiffs, that it was unreasonably dangerous, unsafe and defective, posing an unreasonable risk of harm to consumers, such as the Plaintiffs, who paid the Defendants for the Fire Pit through the Amazon mandated payment system prior to delivery and use.

66.    The potential for severe injuries caused by the Fire Pit was known or should have been known to the Defendants prior to design, manufacture, distribution, advertising, sale, delivery to, and use by, the Plaintiffs, and significantly outweigh the burden or cost

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

22

of taking additional safety precautions to ensure that the type of occurrence that injured Plaintiffs does not occur.

67.    In March 2016, years before Defendants marketed and sold the Fire Pit to the Plaintiffs, Underwriters Laboratories ("UL") published UL 1370, *Standard for Safety Unvented Alcohol Fuel Burning Decorative Appliances*. UL 1370 specified, among other standards that were ignored by Defendants, that appliances like the Fire Pit must be equipped with an "enclosure" that is attached to the device "for protection of the appliance combustion chamber and fuel reservoir," which separates the fuel entry point from the fire source and limits the amount of alcohol that can be added to the reservoir thus preventing possible spilling and combustion of the combustible material. This basic design standard is required to reduce, limit and/or eliminate the risk of a sudden spreading of fire through application of the combustible material—the alcohol, in the case of the Fire Pit. Defendants sold and delivered this defective Fire Pit to the Plaintiffs, which had none of these required protections as part of their design, in violation of these specific safety codes and standards.

68.    The Defendants ignored this and several other standards designed to prevent exactly the thing that occurred in this case. Had Defendants conducted any hazard analysis or reviewed the design standards applicable to the Fire Pit, then the dangers associated with the sale and use of the product at issue would have been ***blatantly obvious*** to Defendants, who should never have advertised, marketed, sold, and delivered the subject Fire Pit to the Plaintiffs in its defective form.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

23

69.    Even though the Fire Pit was in clear violation of several industry design standards and mandatory warnings that were unquestionably applicable to it, the Defendants placed it into the stream of commerce so that it would eventually reach Plaintiffs and be a direct and proximate cause of the injuries and damages they suffered.

70.    Alternative and safer designs of products like the Fire Pit were readily available and of low cost, and, in fact, continue to be sold on Amazon.com. These alternatives were practical and feasible, and they would have certainly reduced or eliminated the risk of harm to Plaintiffs.

71.    The Defendants knew or should have known of the Fire Pit's design defects and the inherent danger and risk posed by the product, but they did not take reasonable steps to alter the design and manufacture of the Fire Pit, among the other wrongs described herein, to protect consumers like the Plaintiffs from the threat and risk of severe bodily harm, severe burning, and possible death.

72.    By failing to adopt these alternatives and instead advertising, distributing, selling, and delivering this dangerous product to the Plaintiffs, Defendants are strictly liable for the injuries suffered by them.

73.    As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiff Anna Schmuck suffered severe burns over a large portion of her body, severe emotional, physical, and psychological injury, permanent scarring and disfigurement, financial loss including, *inter alia*, past, present and future medical expenses, loss of income and future income, other economic damages, and past and future non-economic and other compensatory damages.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

24

74.     As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiffs Bryan Schmuck and Lisa Diaz were forced to pay significant amounts for past, present and future medical expenses, equipment, and other out-of-pocket expenses for medical care and life assistance, and, additionally, suffered consequential and compensatory damages of their own for their physical and emotional harm, mental anguish and emotional distress associated with their harm and Anna's injuries sustained as a result of the wrongful acts of the Defendants.

75.     As a direct and proximate result of Defendants' negligent, wrongful, reckless and careless conduct, including but not limited to Defendants' failure to warn of the inherent defects and dangers of the subject product, Plaintiffs sustained severe, serious and ongoing bodily injuries, incurred and continue to incur substantial costs and expenses for medical care, assistance and treatment, lost time and money from her employment, loss of future earnings, and experienced and continues to experience functional impairments, as well as having been caused to suffer severe pain and suffering, permanent injuries, permanent scarring and disfigurement, economic damages, past, present and future medical costs and lost wages, loss of future earnings, other permanent injuries, emotional distress, mental anguish, stress, anxiety, insomnia, nausea, reduced quality of life, and other compensatory damages.

WHEREFORE, the Plaintiffs, Anna Schmuck, Romand Bryan Schmuck, and Lisa Diaz, pray for judgment in their favor against Defendants, jointly and severally, for all measure of compensatory damages, including past, present and future economic and non-

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

25

economic damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), plus pre-judgment and post-judgment interest, and attorneys' fees and costs.

### COUNT III – NEGLIGENT PERFORMANCE OF UNDERTAKING
### Defendant Amazon

76.    Plaintiffs hereby incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

77.    At all relevant times, the Amazon Defendants owed a duty to exercise a reasonable degree of care to Maryland consumers like the Plaintiffs.

78.    The Amazon Defendants, through their agreements with ARARG, assumed, obtained and mandated control of, and accepted responsibility for, the duty to advertise, distribute, deliver, accept payment for, and sell products not unreasonably dangerous to Maryland consumers.

79.    Amazon negligently breached the above duties, including, *inter alia*:

a.  Advertising, providing, storing, shipping, and selling the Fire Pit, which it knew or should have known was defective and unsafe for its intended use by consumers, such as Plaintiffs, and by placing it into the stream of commerce;

b.  Failing to conduct a proper hazard analysis to address and correct the unreasonably dangerous deign of the Fire Pit before placing it into the stream of commerce, where it could cause harm consumers like Plaintiffs;

c.  Failing to follow or to properly apprise itself of federal and industry guidelines with regard the Fire Pit, instead shipping and delivering it into the stream of

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

26

commerce in its inherently dangerous form without a sufficient warning to the Plaintiffs that such a warning existed;

d. Violating other applicable standards of care in failing, *inter alia*, to recall the product and/or provide the product to the Plaintiffs with an accurate statement of features, elements, precautions, and warnings that would have apprised the Plaintiffs the risks of using such a product.

80.     The Amazon Defendants, acting as principal and/or agent, in obtaining, designing, manufacturing, procuring, distributing, marketing, advertising, selling, storing, and delivering the Fire Pit, negligently failed to execute duties it had assumed in a manner that complied with the applicable standard of care, such as, state and federal law, industry standards, regulations and guidelines pertaining to products such as the Fire Pit, such as recall notices, and other applicable standards of care.

81.     As a direct and proximate result of the Defendants' tortious and wrongful actions and omissions, described herein, Plaintiff Anna Schmuck suffered severe burns over a large portion of her body, severe emotional, physical, and psychological injury, permanent scarring and disfigurement, financial loss including, *inter alia*, past, present and future medical expenses, loss of income and future income, other economic damages, and past and future non-economic and other compensatory damages.

82.     As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiffs Bryan Schmuck and Lisa Diaz were forced to pay significant amounts for past, present and future medical expenses, equipment, and other out-of-pocket expenses for medical care and life assistance, and,

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

27

additionally, suffered consequential and compensatory damages of their own for their physical and emotional harm, mental anguish and emotional distress associated with their harm and Anna's injuries sustained as a result of the wrongful acts of the Defendants.

83.    As a direct and proximate result of Defendants' negligent, wrongful, reckless and careless conduct, including but not limited to Defendants' failure to warn of the inherent defects and dangers of the subject product, Plaintiffs sustained severe, serious and ongoing bodily injuries, incurred and continue to incur substantial costs and expenses for medical care, assistance and treatment, lost time and money from her employment, loss of future earnings, and experienced and continues to experience functional impairments, as well as having been caused to suffer severe pain and suffering, permanent injuries, permanent scarring and disfigurement, economic damages, past, present and future medical costs and lost wages, loss of future earnings, other permanent injuries, emotional distress, mental anguish, stress, anxiety, insomnia, nausea, reduced quality of life, and other compensatory damages.

WHEREFORE, the Plaintiffs, Anna Schmuck, Romand Bryan Schmuck, and Lisa Diaz, pray for judgment in their favor against Defendants, jointly and severally, for all measure of compensatory damages, including past, present and future economic and non-economic damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), plus pre-judgment and post-judgment interest, and attorneys' fees and costs.

### COUNT IV – NEGLIGENCE
### Defendants Amazon and ARARG

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

28

84.     Plaintiffs hereby incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

85.     At all relevant times, the Defendants owed a duty to exercise a reasonable care to consumers, including Plaintiffs, in the design, manufacture, distribution, delivery, marketing, advertising and sale of products to consumers like Plaintiffs.

86.     Defendants, jointly, severally and in partnership and agency, assumed, obtained, and mandated control of, and had responsibility for, the duty to design, manufacture, market, advertise, distribute, deliver, accept payment for, and sell products that would not be unreasonably dangerous to consumers, such as the Fire Pit that caused Plaintiffs' injuries.

87.     The Defendants negligently breached the above duties, including, *inter alia*,

e.  Advertising, providing, storing, shipping, and selling the Fire Pit, which it knew or should have known was defective and unsafe for its intended use by consumers, such as Plaintiffs, and by placing it into the stream of commerce;

f.  Failing to conduct a proper hazard analysis to address and correct the unreasonably dangerous deign of the Fire Pit before placing it into the stream of commerce, where it could cause harm consumers like Plaintiffs;

g.  Failing to follow or to properly apprise itself of federal and industry guidelines with regard the Fire Pit, instead shipping and delivering it into the stream of commerce in its inherently dangerous form without a sufficient warning to the Plaintiffs that such a warning existed;

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

29

h. Violating other applicable standards of care in failing, *inter alia*, to recall the product and/or provide the product to the Plaintiffs with an accurate statement of features, elements, precautions, and warnings that would have apprised the Plaintiffs the risks of using such a product.

88. Defendants negligently developed, obtained, procured, acquired, designed, manufactured, distributed, marketed, sold, tested, advertised, stored, delivered and shipped the subject Fire Pit, despite its defective and unreasonably dangerous condition, which was known or should have been known to the Defendants, as detailed in this Complaint, and failed to exercise reasonable care in complying with the most basic federal, state, common law, and industry standards and guidelines, knowingly and/or negligently subjecting the Plaintiffs to, and thereby causing, severe and permanent harm.

89. Defendants knew or should have known that consumers, including Plaintiffs, would suffer injury because of Defendants' failure to exercise reasonable care.

90. As a direct and proximate result of the Defendants' negligent and wrongful actions and inactions as described herein, Plaintiff Anna Schmuck suffered severe burns over a large portion of her body, severe emotional, physical, and psychological injury, permanent scarring and disfigurement, financial loss including, *inter alia*, past, present and future medical expenses, loss of income and future income, other economic damages, and past and future non-economic and other compensatory damages.

91. As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiffs Bryan Schmuck and Lisa Diaz were forced to pay significant amounts for past, present and future medical expenses,

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

equipment, and other out-of-pocket expenses for medical care and life assistance, and, additionally, suffered consequential and compensatory damages of their own for their physical and emotional harm, mental anguish and emotional distress associated with their harm and Anna's injuries sustained as a result of the wrongful acts of the Defendants.

92.    As a direct and proximate result of Defendants' negligent, wrongful, reckless and careless conduct, including but not limited to Defendants' failure to warn of the inherent defects and dangers of the subject product, Plaintiffs sustained severe, serious and ongoing bodily injuries, incurred and continue to incur substantial costs and expenses for medical care, assistance and treatment, lost time and money from her employment, loss of future earnings, and experienced and continues to experience functional impairments, as well as having been caused to suffer severe pain and suffering, permanent injuries, permanent scarring and disfigurement, economic damages, past, present and future medical costs and lost wages, loss of future earnings, other permanent injuries, emotional distress, mental anguish, stress, anxiety, insomnia, nausea, reduced quality of life, and other compensatory damages.

WHEREFORE, the Plaintiffs, Anna Schmuck, Romand Bryan Schmuck, and Lisa Diaz, pray for judgment in their favor against Defendants, jointly and severally, for all measure of compensatory damages, including past, present and future economic and non-economic damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), plus pre-judgment and post-judgment interest, and attorneys' fees and costs.

## COUNT V – AGENCY
### Defendants Amazon and ARARG

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

31

93.    Plaintiffs hereby incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

94.    At all times relevant hereto, the Amazon Defendants, through the BSA, FBA, and/or other agreements with Defendant ARARG, established itself as principal and/or agent in the principal-agent relationship with Defendant ARARG with regard to the Fire Pit and other "ARARG" products, negligently placing them into the stream of commerce through Amazon's internet applications, platforms, websites, payment systems, marketplace, fulfillment centers, and delivery apparatus.

95.    As principal and/or agent, Amazon and ARARG had a duty to provide proper instructions to each other as its agent, and to mandate the safety of its products and compliance with safety requirements, protocols, regulations, statutes and industry standards applicable to the Fire Pit at issue in this case before it was introduced into the stream of commerce, causing harm to the Plaintiffs.

96.    As principal and/or agent, Amazon and ARARG had a duty to employ proper instrumentalities to ensure and supervise its agent, so that it did not place dangerous products into the stream of commerce that posed a serious risk of harm to others, including consumers such as the Plaintiffs.

97.    Defendants were negligent in the manufacture, design, sale, and distribution of the Fire Pit, and did so in contravention of applicable laws, regulations, and other standards of care pertaining to the Fire Pit.

98.    Defendants knew or should have known of the unreasonably dangerous and defective character and condition of the Fire Pit and that it posed a unreasonable risk of

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

32

harm to consumers, and yet it failed to take action to suspend, recall, redesign or protect consumers from that defective and unreasonably dangerous condition in the manufacture, design, distribution, advertising, delivery, and sale of the Fire Pit to consumers like Plaintiffs, instead breaching their duties, ignoring safety requirements, acquiescing, ratifying and accepting the negligence of each other in agency by continuing to manufacture, design, distribute, deliver, sell, accept payment for and otherwise place the Fire Pit as an unreasonable and defective instrumentality of harm for sale to and use by consumers, such as the Plaintiffs, on Amazon.com.

99.    In addition to its own acts, omission, and violations of laws, regulations, and industry standards, averred herein, Defendants are each liable for any of the negligent acts, omissions, and violation of all applicable laws, regulations, and industry standards attributable to the other, as each was acting as actual or implied agent for the other when it committed these violations.

100.    As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiff Anna Schmuck suffered severe burns over a large portion of her body, severe emotional, physical, and psychological injury, permanent scarring and disfigurement, financial loss including, *inter alia*, past, present and future medical expenses, loss of income and future income, other economic damages, and past and future non-economic and other compensatory damages.

101.    As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiffs Bryan Schmuck and Lisa Diaz were forced to pay significant amounts for past, present and future medical expenses,

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

33

equipment, and other out-of-pocket expenses for medical care and life assistance, and, additionally, suffered consequential and compensatory damages of their own for their physical and emotional harm, mental anguish and emotional distress associated with their harm and Anna's injuries sustained as a result of the wrongful acts of the Defendants.

102.    As a direct and proximate result of Defendants' negligent, wrongful, reckless and careless conduct, including but not limited to Defendants' failure to warn of the inherent defects and dangers of the subject product, Plaintiffs sustained severe, serious and ongoing bodily injuries, incurred and continue to incur substantial costs and expenses for medical care, assistance and treatment, lost time and money from her employment, loss of future earnings, and experienced and continues to experience functional impairments, as well as having been caused to suffer severe pain and suffering, permanent injuries, permanent scarring and disfigurement, economic damages, past, present and future medical costs and lost wages, loss of future earnings, other permanent injuries, emotional distress, mental anguish, stress, anxiety, insomnia, nausea, reduced quality of life, and other compensatory damages.

WHEREFORE, the Plaintiffs, Anna Schmuck, Romand Bryan Schmuck, and Lisa Diaz, pray for judgment in their favor against Defendants, jointly and severally, for all measure of compensatory damages, including past, present and future economic and non-economic damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), plus pre-judgment and post-judgment interest, and attorneys' fees and costs.

## COUNT VI – BREACH OF EXPRESS AND IMPLIED WARRANTIES
### Defendants Amazon and ARARG

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

34

103. Plaintiffs hereby incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

104. Defendants, in connection with their business activities described herein, and in their design, manufacture, distribution, shipping, delivering, advertising, marketing, and sale of the Fire Pit, made both express and implied warranties with regard to it, warranting, *inter alia*, that the product was safe, fit for its intended use and for Plaintiffs' particular purpose, of merchantable quality, and not defective or unsafe.

105. Defendants were aware that Plaintiffs were reasonably relying on them to provide a safe product for consumer purposes, thereby impliedly warranting that the goods it designed, manufactured, distributed, shipped, delivered, marketed, sold, advertised, and/or otherwise brought into the stream of commerce, including the Fire Pit, would in fact be safe and suitable for Plaintiffs' use and purpose.

106. In reliance upon Defendants' skill and judgment and the implied warranties of merchantability and fitness for that purpose, as advertised, marketed and enticed by the Defendants, Plaintiffs purchased, received and used the Fire Pit in its intended manner.

107. These warranties, however, were false, misleading, and inaccurate in that the Fire Pit was defective, unreasonably dangerous, unsafe, unfit for its intended use and unfit for its consumer purpose as marketed and advertised, including Plaintiffs' purpose, and not of merchantable quality or fit use, and otherwise generally defective.

108. As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiff Anna Schmuck suffered severe burns over a large portion of her body, severe emotional, physical, and psychological injury,

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

permanent scarring and disfigurement, financial loss including, *inter alia*, past, present and future medical expenses, loss of income and future income, other economic damages, and past and future non-economic and other compensatory damages.

109.   As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiffs Bryan Schmuck and Lisa Diaz were forced to pay significant amounts for past, present and future medical expenses, equipment, and other out-of-pocket expenses for medical care and life assistance, and, additionally, suffered consequential and compensatory damages of their own for their physical and emotional harm, mental anguish and emotional distress associated with their harm and Anna's injuries sustained as a result of the wrongful acts of the Defendants.

110.   As a direct and proximate result of Defendants' negligent, wrongful, reckless and careless conduct, including but not limited to Defendants' failure to warn of the inherent defects and dangers of the subject product, Plaintiffs sustained severe, serious and ongoing bodily injuries, incurred and continue to incur substantial costs and expenses for medical care, assistance and treatment, lost time and money from her employment, loss of future earnings, and experienced and continues to experience functional impairments, as well as having been caused to suffer severe pain and suffering, permanent injuries, permanent scarring and disfigurement, economic damages, past, present and future medical costs and lost wages, loss of future earnings, other permanent injuries, emotional distress, mental anguish, stress, anxiety, insomnia, nausea, reduced quality of life, and other compensatory damages.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

WHEREFORE, the Plaintiffs, Anna Schmuck, Romand Bryan Schmuck, and Lisa Diaz, pray for judgment in their favor against Defendants, jointly and severally, for all measure of compensatory damages, including past, present and future economic and non-economic damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), plus pre-judgment and post-judgment interest, and attorneys' fees and costs.

## COUNT VII – VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT
### Defendants Amazon and ARARG

111. Plaintiffs hereby incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

112. Pursuant to Md. Code Ann., Comm. Law § 13-301 et seq., the Defendants, ARARG and Amazon, are prohibited from, *inter alia*, making false or deceptive statements concerning products sold to consumers; failing to state a material fact if the failure deceives or tends to deceive the consumer; and misrepresenting, concealing, suppressing, or omitting a material fact with the actual or constructive knowledge that a consumer would rely on the same.

113. Defendants Amazon and ARARG were aware or should have been aware that the Fire Pit was dangerous and defective to consumers in Maryland, including the Plaintiffs, yet, either intentionally or negligently, made several false or misleading representations to Plaintiffs and other Maryland consumers on Amazon.com, including, but not limited to that the Fire Pit safely utilizes "clean fuel" which is "easy to find and affordable"; that the Fire Pit can safely be used both indoors and outdoors; that the flame

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

in the Fire Pit can safely be extinguished for the purpose of re-lighting; and, that the Fire Pit is safe when used with the fuel sources specified.

114.    At the time of Plaintiffs' purchase of the Fire Pit, Defendants failed to disclose and/or purposefully concealed facts relating to the Fire Pit that they knew or should have known, including the risk of flame jetting and flash fires that can develop suddenly if the product is used under certain conditions, together with the significant risk of serious injury, burning, or death relating to the application of the suggested "clean fuels" to the Fire Pit in conjunction with an ignition source.

115.    The foregoing facts are material facts that are essential for Plaintiffs to have known before they purchased and used the product from ARARG and Amazon.

116.    The Plaintiffs relied upon the Defendants' intentional or negligent misrepresentations of facts, purposeful concealment of fact, negligent acts and omissions, and failure to disclose material facts essential to the safe use of this dangerous product to their extreme detriment, resulting in the subject incident and Plaintiffs' injuries and/or damages.

117.    Defendants, therefore, violated the Maryland Consumer Protection Act, and they are subject to a private cause of action under § 13-408 of the Act.

118.    The Defendants' Consumer Protection Act violations are a direct and proximate cause of the Plaintiffs' injuries and damages in this case.

119.    As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiff Anna Schmuck suffered severe burns over a large portion of her body, severe emotional, physical, and psychological injury,

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

38

permanent scarring and disfigurement, financial loss including, *inter alia*, past, present and future medical expenses, loss of income and future income, other economic damages, and past and future non-economic and other compensatory damages.

120. As a direct and proximate result of the Defendants' tortious and wrongful actions and inactions as described herein, Plaintiffs Bryan Schmuck and Lisa Diaz were forced to pay significant amounts for past, present and future medical expenses, equipment, and other out-of-pocket expenses for medical care and life assistance, and, additionally, suffered consequential and compensatory damages of their own for their physical and emotional harm, mental anguish and emotional distress associated with their harm and Anna's injuries sustained as a result of the wrongful acts of the Defendants.

121. As a direct and proximate result of Defendants' negligent, wrongful, reckless and careless conduct, including but not limited to Defendants' failure to warn of the inherent defects and dangers of the subject product, Plaintiffs sustained severe, serious and ongoing bodily injuries, incurred and continue to incur substantial costs and expenses for medical care, assistance and treatment, lost time and money from her employment, loss of future earnings, and experienced and continues to experience functional impairments, as well as having been caused to suffer severe pain and suffering, permanent injuries, permanent scarring and disfigurement, economic damages, past, present and future medical costs and lost wages, loss of future earnings, other permanent injuries, emotional distress, mental anguish, stress, anxiety, insomnia, nausea, reduced quality of life, and other compensatory damages.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

39

WHEREFORE, the Plaintiffs, Anna Schmuck, Romand Bryan Schmuck, and Lisa Diaz, pray for judgment in their favor against Defendants, jointly and severally, for all measure of compensatory damages, including past, present and future economic and non-economic damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), plus pre-judgment and post-judgment interest, and as permitted by § 13-408(b) of the Maryland Consumer Protection Act, an award of reasonable attorneys' fees and costs for prosecution of this action.

## COUNT VIII – FRAUDULENT MISREPRESENTATION AND/OR NON-DISCLOSURE (DECEIT)
### Amazon and ARARG

122. Plaintiffs hereby incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

123. The Defendants, Amazon and ARARG, collectively made statements concerning the product at issue on Amazon's internet applications, platforms, and websites which they knew to be false and patently misleading to Plaintiffs at the time of their purchase, including, among others, those specified in the preceding paragraphs, and statements such as: that if "a certain amount of alcohol" (not specified) was added to the Fire Pit that it could burn for a set period of time and be safely used to create a "campfire atmosphere"; that simply covering the Fire Pit with the "coaster" provided was sufficient to extinguish flame; and, that the "clean fuel" for the Fire Pit was "simple" and easy for consumers to find because the only requirement is that the fuel be 70% or 91% isopropyl alcohol or 95% or higher ethanol alcohol.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

40

124.    The Defendants, Amazon and ARARG, likewise, had a duty to consumers to disclose the safety hazards associated with use of the Fire Pit of which they were aware at the time of Plaintiffs' purchase, including those discussed in the preceding paragraphs, including that there was a serious threat of injury or death related to fire jetting and/or flash fires causally linked to the use of "tabletop fireplaces" like the Fire Pit at issue; that these products and similar products have been subject to safety recalls in Canada and the United States on more than one occasion; that severe injury and/or death could result in several ways that were not obvious to the consumer, including, but not limited to, if the fuel container used to fill the Fire Pit was of a certain shape or volume, if the Fire Pit was overfilled before lit, or if that fumes could ignite the alcohol container if it was within a certain distance of the Fire Pit.  The Defendants knowingly concealed and failed to disclose that serious injury or death could result if clear alcohol residue, difficult to see, escaped the Fire Pit onto clothing or furniture, which can result in flash fires that spread so quickly that the consumer has no warning they will occur.  The Defendants knowingly concealed and failed to warn consumers that the flame inside the Fire Pit can be difficult to see under certain scenarios, leading to the belief that the flame has gone out and that more fuel is required to re-light it, which can result in almost instantaneous flame jetting and/or flash fires, serious injury, and death.

125.    The Defendants, individually and collectively, intentionally made and caused to be published on various Amazon platforms, the foregoing fraudulent misrepresentations and/or Defendants knowingly concealed known facts with reckless disregard and callous indifference to the health, safety, and well-being of Plaintiffs in the

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

41

interest of earning a profit at lower cost, regardless of the risk of death and serious injuries to Plaintiffs and other consumers.

126. The Plaintiffs, had they known that Defendants were misrepresenting or failing to disclose material facts regarding the Fire Pit and the dangers associated with its use described herein, and as evidenced by incident involving Plaintiff Anna Schmuck herself, would never have purchased the product. Instead, Plaintiffs relied on Defendants' misrepresentations and concealments to their extreme detriment and harm, in that the product was not safe to use in the manner Defendants falsely advertised, promoted and recommended.

127. As a direct and proximate result of Defendants' fraudulent misrepresentations and knowing concealments, *i.e.*, their deceit, Plaintiff Anna Schmuck suffered severe burns over a large portion of her body, severe emotional, physical, and psychological injury, permanent scarring and disfigurement, financial loss including, *inter alia*, past, present and future medical expenses, loss of income and future income, other economic damages, and past and future non-economic and other compensatory damages.

128. As a direct and proximate result of Defendants' fraudulent misrepresentations and knowing concealments, *i.e.*, their deceit, Plaintiffs Bryan Schmuck and Lisa Diaz were forced to pay significant amounts for past, present and future medical expenses, equipment, and other out-of-pocket expenses for medical care and life assistance, and, additionally, suffered consequential and compensatory damages of their own for their physical and emotional harm, mental anguish and emotional distress

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

42

associated with their harm and Anna's injuries sustained as a result of the wrongful acts of the Defendants.

129. As a direct and proximate result of Defendants' fraudulent misrepresentations and knowing concealments, *i.e.*, their deceit,, Plaintiffs sustained severe, serious and ongoing bodily injuries, incurred and continue to incur substantial costs and expenses for medical care, assistance and treatment, lost time and money from her employment, loss of future earnings, and experienced and continues to experience functional impairments, as well as having been caused to suffer severe pain and suffering, permanent injuries, permanent scarring and disfigurement, economic damages, past, present and future medical costs and lost wages, loss of future earnings, other permanent injuries, emotional distress, mental anguish, stress, anxiety, insomnia, nausea, reduced quality of life, and other compensatory damages.

WHEREFORE, the Plaintiffs, Anna Schmuck, Romand Bryan Schmuck, and Lisa Diaz, pray for judgment in their favor against Defendants, jointly and severally, for all measure of compensatory damages, including past, present and future economic and non-economic damages, and punitive in excess of Seventy-Five Thousand Dollars ($75,000.00), together with pre-judgment and post-judgment interest, and attorneys' fees and costs.

### COUNT IX – APPARENT MANFACTURER
**Amazon Defendants**

130. Plaintiffs hereby incorporate by reference the foregoing paragraphs of the Complaint as if fully set forth herein.

LAW OFFICES

McCARTHY WILSON LLP

A LIMITED LIABILITY PARTNERSHIP

WWW.MCWILSON.COM

43

131.    Plaintiffs reasonably concluded at the time of their purchase of the Fire Pit on Amazon.com, and based on Amazon's marketing, advertising, sale, distribution, and delivery of the Fire Pit at issue, that Amazon was the designer or manufacturer of the Fire Pit and/or that that Amazon had, before it placed the product into the stream of commerce, subjected it to the its rigorous quality control standards it publishes to consumers, including safety testing to ensure compliance with all applicable legal and industry standards.

132.    As averred herein, Amazon did distribute, sell, advertise, and deliver the Fire Pit to the Plaintiffs, acting as the manufacturer of the Fire Pit in all relevant respects, including deriving a profit from the sale of the Fire Pit.  Pursuant to the Restatement (Third) of Torts § 14, even if Amazon were not the Fire Pit's manufacturer or designer, it would be subject to the same liability as the product's manufacturer or designer because Amazon is the Fire Pit's apparent manufacturer.

133.    Amazon, as apparent manufacturer and for the reasons already stated, is strictly liable to the Plaintiffs for its tortious and wrongful acts and omissions, and its breach of applicable standards of care, which were the direct and substantial cause of Plaintiffs' injuries and damages.

134.    As a direct and proximate result of Amazon's tortious and wrongful acts and omissions, Plaintiff Anna Schmuck suffered severe burns over a large portion of her body, severe emotional, physical, and psychological injury, permanent scarring and disfigurement, financial loss including, *inter alia*, past, present and future medical

expenses, loss of income and future income, other economic damages, and past and future non-economic and other compensatory damages.

135.    As a direct and proximate result of Amazon's tortious and wrongful acts and omissions, Plaintiffs Bryan Schmuck and Lisa Diaz were forced to pay significant amounts for past, present and future medical expenses, equipment, and other out-of-pocket expenses for medical care and life assistance, and, additionally, suffered consequential and compensatory damages of their own for their physical and emotional harm, mental anguish and emotional distress associated with their harm and Anna's injuries sustained as a result of the wrongful acts of the Defendants.

136.    As a direct and proximate result of Amazon's tortious and wrongful acts and omissions, Plaintiffs sustained severe, serious and ongoing bodily injuries, incurred and continue to incur substantial costs and expenses for medical care, assistance and treatment, lost time and money from her employment, loss of future earnings, and experienced and continues to experience functional impairments, as well as having been caused to suffer severe pain and suffering, permanent injuries, permanent scarring and disfigurement, economic damages, past, present and future medical costs and lost wages, loss of future earnings, other permanent injuries, emotional distress, mental anguish, stress, anxiety, insomnia, nausea, reduced quality of life, and other compensatory damages.

WHEREFORE, the Plaintiffs, Anna Schmuck, Romand Bryan Schmuck, and Lisa Diaz, pray for judgment in their favor against Defendants, jointly and severally, for all measure of compensatory damages, including past, present and future economic and non-

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

economic damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), pre-judgment and post-judgment interest, and attorneys' fees and costs.

Respectfully submitted,

MCCARTHY WILSON LLP

*/s/ Richard W. Evans*
Richard W. Evans (AIS/CPF# 9506210124)
Sean V. Werner (AIS/CPF#: 0312170353)
2200 Research Boulevard, Suite 500
Rockville, Maryland 20850
(301) 762-7770
werners@mcwilson.com
*Attorneys for the Plaintiffs,*
*Lisa Diaz, Romand Bryan Schmuck, and*
*Anna Schmuck*

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM